## EDWARD S. BRADFORD vs. FRED McQUESTEN.

Suffolk.    March 3, 1902. — September 2, 1902.

Present: HOLMES, C. J., KNOWLTON, MORTON, BARKER, & LORING, JJ.

*Flats. Wharf. Grant. Harbor and Land Commissioners.*

St. 1851, c. 26, authorizing Donald McKay, the proprietor of a wharf on Border Street in that part of Boston called East Boston, "to extend and maintain his wharf into the harbor channel as far as the line established by the act entitled 'an act concerning the harbor of Boston,' passed on the seventeenth day of March, in the year one thousand eight hundred and forty," was a legislative grant and not merely a revocable license, and, whether or not a wharf built since the passage of St. 1866, c. 149, under authority of the original grant is subject to regulation by the harbor and land commissioners, at any rate the owner of such a wharf cannot be required to make compensation under Pub. Sts. c. 19, § 14, for the displacement of tide water in its construction, such a requirement being in derogation of the original grant.

*Semble,* that the establishment of a new harbor line may be one of the things that the Legislature can do without violating a legislative grant made before the passage of St. 1866, c. 149, authorizing the extension of a wharf to a former harbor line farther out.

The question, whether one, who has erected a structure in tide water under a license granted by the secretary of war under a statute of the United States, is subject to the provisions of Pub. Sts. c. 19, § 8, (R. L. c. 96, § 16,) raised but not passed upon.

MORTON, J.    This is an action of contract to recover of the defendant the amount assessed upon him by the board of har-

bor and land commissioners under Pub. Sts. c. 19, § 14, as compensation for the displacement of tide water caused by the extension of his wharf at East Boston. The case was heard upon agreed facts, and judgment was ordered in the Superior Court for the defendant. The plaintiff thereupon appealed to this court.

The displacement for which compensation is sought was caused by the filling by the defendant of a portion of the land and flats formerly belonging to one Donald McKay, and which have passed by mesne conveyances to the defendant, — the deed to him bearing date March 31, 1897. By St. 1851, c. 26, McKay was authorized "to extend and maintain his wharf into the harbor channel as far as the line established by the act entitled, 'an act concerning the harbor of Boston,' passed on the seventeenth day of March, in the year one thousand eight hundred and forty." St. 1840, c. 35. The harbor line here referred to was changed by St. 1882, c. 48. As now established the harbor line is within that fixed by the St. of 1840. But as we understand the agreed facts and the plans, the defendant's wharf does not extend beyond the line established by the St. of 1882. The filling for which compensation is sought has been done by the defendant since June, 1897. Before the deed to the defendant there had been more or less filling by the defendant's predecessors in title and pile wharves had been built. The property does not seem during this time to have been developed according to any plan, and the filling, although considerable in amount, appears to have been of a desultory nature, and to have consisted largely of refuse matter dumped there by the city of Boston and others by the permission of the owners.

We do not understand the plaintiff to contend that, whatever rights McKay had under the St. of 1851 have not passed to the defendant. And the first question is whether that statute operated as a grant, or was only a revocable license. It is plain, it seems to us, that it operated as a legislative grant subject to the terms and conditions expressed in it. *Fitchburg Railroad* v. *Boston & Maine Railroad*, 3 Cush. 58, 87. No particular words are necessary to constitute a legislative grant, and the Commonwealth could divest itself of any right or title in or to the flats belonging to McKay, as well by an act of the Legislature, as

by a more formal instrument. *Mayo* v. *Libby*, 12 Mass. 339, 344. *Hastings* v. *Grimshaw*, 153 Mass. 497. *Enfield* v. *Permit*, 5 N. H. 280. Hundreds of similar acts had been passed before the St. of 1869, c. 432, was enacted declaring that any authority thereafter given to build on or enclose ground in tide waters should be construed as a revocable license, and it has been the common understanding, we think, that they operated as grants, and wharves have been built and improvements made on that footing. The acts were passed to promote trade and commerce by enabling and encouraging the owners of flats to build wharves, warehouses, and other structures thereon for the use and convenience of those having occasion to resort to the ports and harbors where the flats were situated, and requiring the facilities afforded by such structures. They should be construed so as best to promote the object which the Legislature had in view, if that can be done without doing violence to settled rules of construction. In the present case there is nothing in the circumstances disclosed tending to show that the act was not intended to operate, and should not be construed as operating as a grant. The interests of the Commonwealth in navigation are carefully protected by limiting the extension to the harbor line, and by requiring that below low water the wharf shall be built on piles which shall be certain distances apart. It would seem plain that the Commonwealth intended to part with all its rights except so far as contained in the conditions on which the grant was made.

The next question and a more difficult one, and one which was suggested but not considered in *Hamlin* v. *Pairpoint Manuf. Co.* 141 Mass. 51, is whether since the passage of St. 1866, c. 149, the owners of flats are subject to the regulations of the harbor and land commissioners, and if so to what extent. We do not find it necessary to consider or pass upon the general question thus stated. Undoubtedly all real estate may be subjected to some restraint for the general good. But in the present case the Commonwealth seeks to make the defendant pay for the displacement of tide water caused by the very acts which he was authorized by the St. of 1851 to do. The defendant does not complain that the harbor line of 1882 is within that established by the St. of 1840, and very likely the substitution of the

harbor line of 1882 for that of 1840 was one of the things which the Legislature could do without interfering with the grant made by the St. of 1851. See *Commonwealth* v. *Alger*, 7 Cush. 53. As we understand the agreed facts, the defendant, while not admitting the jurisdiction of the harbor and land commissioners, gave written notice to them of what he intended to do, and submitted to them plans of the extension and of the mode in which the work was to be performed. The commissioners approved, and the defendant has built in accordance with the plans thus presented and approved. Whether, therefore, the commissioners had power to require the defendant to give them written notice and submit plans to them, and whether they had the power to prescribe the direction, mode, and limits of building would seem under the circumstances of the present case to be a mere moot question. The only matter really affecting the defendant's rights is the claim that is made upon him for compensation for the tide water displaced. That demand we think is clearly in derogation of the grant formerly made and cannot be sustained. Confining ourselves to the precise point before us, namely, whether, in view of the St. of 1851, the commissioners can require the defendant to make compensation for tide water displaced by a filling made under the grant therein contained, we are of opinion that the ruling of the Superior Court was right.

The defendant also contends that he had authority, under a license granted by the secretary of war of the United States in June, 1897, to do what he has done, and that the work had already been begun within the meaning of those words as used in St. 1866, c. 149, § 4, and Pub. Sts. c. 19, § 8, so that the provisions of those statutes are inapplicable. But in view of the conclusions to which we have come on the questions already considered it is not necessary to pass upon the questions thus presented.

*Judgment for the defendant.*

*A. W. DeGoosh*, (*F. B. Greenhalge* with him,) Assistant Attorneys General, for the plaintiff.

*T. W. Proctor*, for the defendant.