TREASURER & RECEIVER GENERAL *vs.* REVERE SUGAR REFINERY.

SAME *vs.* DARROW-MANN COMPANY.

Suffolk.  October 16, 1923. — February 25, 1924.

Present: RUGG, C.J., BRALEY, DECOURCY, & PIERCE, JJ.

*Practice, Civil,* Appeal, Exceptions.  *Tidewater.  Mystic River Corporation. Commonwealth.  Statute,* Construction of grant of rights in tidewater. *License.*

Two actions, each by the Treasurer and Receiver General against a corporation to recover assessments for tidewater displacement under G. L. c. 91, § 21, were heard together in the Superior Court by a judge without a jury upon " agreed facts," the parties stipulating that evidence in addition to the agreed facts might be presented and that the court might draw inferences from the agreed facts and such additional evidence.  Requests for rulings were presented by both parties and exceptions were saved by the plaintiff to rulings upon such requests and to a finding for the defendant in each action.  Judgment was ordered for the defendant in each action.  The plaintiff also, in each action, filed a paper purporting to appeal from the findings and order of judgment.  The record before this court comprised a single bill of exceptions covering both actions, and separate appeals. Without considering whether the " agreed facts " might be interpreted as " a case stated " so that the actions would come before the court rightly upon the appeals from the orders of judgment, but stating that there could not be, touching the same alleged errors in an action at law, both exceptions and appeal, this court *held,* that the single bill of exceptions presented for review in appropriate form all the questions of law as to which error was alleged.

At the hearing of an action by the Treasurer and Receiver General against a corporation to recover, under G. L. c. 91, § 21, an assessment for tidewater displacement in the Mystic River, it was agreed that the structure and fill made by the defendant were almost entirely within the areas governed by the pertinent United States statutes and were authorized in the manner therein prescribed.  At the argument of exceptions by the plaintiff to rulings, findings and an order of judgment for the defendants, it was not contended that the United States statutes excluded the operation of the statutes of the Commonwealth affecting the defendants, and *it was assumed,* for the purposes of the decision, that they did not have such effect.

The terms of St. 1855, c. 481, operated as a legislative grant to the Mystic River Corporation of a right to enclose and fill up flats subject to the terms and condition therein set forth, and not as a mere revocable license.

The grant effected by St. 1855, c. 481, was upon the condition subsequent that it might be avoided by the Commonwealth if the filling was not made and the structures completed in the time limited by that statute and by subsequent extensions under statutes ending with St. 1893, § 334; but, in order for a forfeiture to be worked and title to be revested in the Commonwealth upon a breach of such condition, some definite act on the part of the Commonwealth was necessary.

In order that the Commonwealth as grantor may take advantage of the breach of condition subsequent above described, it must do so either by judicial proceeding or by a legislative declaration of forfeiture.

While a grant by the Commonwealth must be construed most strongly against the grantee, such construction does not require that the grant above described shall be interpreted to have expired merely by its own limitation.

Action by the Commonwealth sufficient to revest in itself, upon a breach of the condition subsequent above described, title to that which was granted to the Mystic River Corporation by St. 1855, c. 481, was not shown by the fact that the Directors of the Port of Boston required a corporation displacing tidewater, filling flats and erecting structures on the Mystic River as a successor to the rights granted to the Mystic River Corporation to procure from them a license under R. L. c. 96, § 16, and that in a license so procured the directors provided as follows: "The amount of tide-water displaced by the work hereby authorized shall be ascertained by said Directors, and compensation therefor shall be made by the said . . . [the corporation], its successors and assigns, by paying into the treasury of the Commonwealth thirty-seven and one-half (37½) cents for each cubic yard so displaced, being the amount hereby assessed by said Directors, the same to be reserved as a compensation fund for the harbor of Boston. Nothing in this License shall be so construed as to impair the legal rights of any person;" nor did the fact, that the corporation applied for such license and accepted it, affect the corporation's rights under the grant.

The insertion by the Directors of the Port of Boston in the license issued as above described of the clause requiring payment for displacement of tidewater was in derogation of the grant by the Commonwealth and hence beyond the power of the public officers to demand as a condition of granting the license.

Two ACTIONS OF CONTRACT to recover under R. L. c. 96, § 23, (see now G. L. c. 91, § 21) assessments for tidewater displacements in the Mystic River. Writs dated December 3, 1920.

In the Superior Court, the actions were heard by *Mc-Laughlin*, J., without a jury, upon " agreed facts," the parties stipulating that evidence in addition to the facts so agreed upon might be offered at the trial by any of the parties to

the suit and that, from the facts so agreed upon and such other additional evidence as might be offered, the trial judge might draw further inferences of fact.

It was agreed that the structures and fills made by the defendant " were almost entirely within the areas governed by the United States statutes " pertinent thereto " and were authorized in the manner therein prescribed." In the license issued by the Directors of the Port of Boston on May 5, 1915, to the Darrow-Mann Company were the following provisions:

" The amount of tide-water displaced by the work hereby authorized shall be ascertained by said Directors, and compensation therefor shall be made by the said . . . [corporation], its successors and assigns, by paying into the treasury of the Commonwealth thirty-seven and one-half (37½) cents for each cubic yard so displaced, being the amount hereby assessed by said Directors, the same to be reserved as a compensation fund for the harbor of Boston. Nothing in this license shall be so construed as to impair the legal rights of any person."

A provision of the same character was in the license issued by the Directors of the Port of Boston to the Revere Sugar Refinery on July 25, 1916, and similar provisions were in a license issued to the Revere Sugar Refinery by the Commission on Waterways and Public Lands on June 7, 1917.

The plaintiff asked for rulings (1) " that, as a matter of law, upon all the evidence, the plaintiff is entitled to recover;" and (2) " that on the expiration of ten years from May 7, 1893, to wit, May 7, 1903, which was the last extension of time granted by the Legislature, the rights ceased and the defendants had no authority to displace tidewater as they did except by virtue of the licenses granted by the Directors of the Port of Boston and the Commission on Waterways and Public Lands as set forth and subject to the conditions set forth therein."

These rulings were refused.

The defendants asked for the following rulings:

" 1. St. 1855, c. 481, amounted to a grant upon a condition subsequent.

" 2. In the case of any work done in the exercise of the rights granted by St. 1855, c. 481, the Commonwealth could not lawfully make any charge for tidewater displacement.

" 3. Until the right or title of the Mystic River Corporation and its successors created by St. 1855, c. 481, was legally divested by affirmative action on the part of the Commonwealth, the successors in title of the Mystic River Corporation had the right to fill without paying compensation therefor.

" 4. The right or title created by St. 1855, c. 481, could be divested only by some act on the part of the Commonwealth equivalent to an entry for condition broken.

" 5. Neither the Directors of the Port of Boston nor the Commission on Water Ways and Public Lands had the power to terminate the rights of the successors in title of the Mystic River Corporation which were acquired under St. 1855, c. 481.

" 6. On the assumption that after May 7, 1903, there was a breach of the condition on which the successors in title of the Mystic River Corporation held their right or title under St. 1855, c. 481, they could be divested of this right or title only through judicial proceedings instituted for the purpose of obtaining a judgment or decree of forfeiture or by a legislative declaration of forfeiture.

" 7. When the petitions for licenses were filed in these cases the defendants had the right to erect properly approved structures upon their flats in the Mystic River without paying compensation for the displacement of tidewater.

" 8. The provisions in the licenses with reference to compensation for tidewater displacement do not preclude the defendants from successfully defending in these suits if at the time of the granting of the licenses they had a legal right to fill without paying compensation therefor.

" 9. Upon all the evidence the defendants are entitled to judgment."

The judge granted the rulings asked for by the defendants and found for the defendant in each action " on the agreed facts." The plaintiff filed one bill of exceptions as to the two cases. The plaintiff also filed in each action a paper

entitled, " Claim of Appeal," in which he purported to appeal from " the finding and the order for judgment for the defendant."

*J. H. Devlin,* Assistant Attorney General, for the plaintiff.

*R. G. Dodge, (J. M. Raymond* with him,) for the defendants.

RUGG, C.J.   These are actions at law in behalf of the Commonwealth to recover from the defendants assessments for tidewater displacement under R. L. c. 96, § 23, now G. L. c. 91, § 21.   The cases were submitted to the Superior Court on " agreed facts."   Requests for rulings by the plaintiff were denied and others by the defendants were granted.   Finding was made and judgment ordered for the defendant in each case.

1. The plaintiff filed one bill of exceptions for both cases and also appealed from each order for judgment.   No question of practice has been argued.   It is not necessary to consider whether, if there were no exceptions, the " agreed facts " might be interpreted as a " case stated," *Frati* v. *Jannini,* 226 Mass. 430, and thus the cases come before us rightly by appeal from the orders for judgment, *Samuel* v. *Page-Storms Drop Forge Co.* 243 Mass. 133.   G. L. c. 231, § 96.   Plainly there cannot be, touching the same alleged errors in an action at law, both exceptions and appeal. The single bill of exceptions presents for review in appropriate form all the questions of law as to which error is alleged.   G. L. c. 231, § 113.   *Lumiansky* v. *Tessier,* 213 Mass. 182, 188.   The cases will be considered on that footing.

2. In the action against Revere Sugar Refinery recovery is sought for the displacement of tidewater caused by the filling of a portion of the flats lying in front of its upland situated between Medford Street in that portion of Boston called Charlestown and the shore of Mystic River and by erecting on those flats pile platforms and a wharf.   In the action against Darrow-Mann Company recovery is sought for displacement of tidewater caused by erecting a coal wharf and storage pocket in the same general neighborhood. In both cases the tidewater was displaced within the area described in St. 1855, c. 481.   The defendants have succeeded

to the rights of the Mystic River Corporation under that and succeeding statutes.

The general question presented is whether under c. 481 of St. 1855 the defendants may displace tidewater by such filling and structures without liability therefor under R. L. c. 96, § 23, now G. L. c. 91, § 21.

It is stated in the exceptions that the structures and fills made by the defendants were almost entirely within the areas governed by 25 U. S. Sts. at Large, 425, c. 860, § 12 (as amended by 26 U. S. Sts. at Large, 455, c. 907, § 12) and by 30 U. S. Sts. at Large, 1151, c. 425, § 10. It has not been argued that these statutes of the United States exclude the operation of statutes of this Commonwealth affecting these defendants, and for the purposes of this decision it is assumed that they do not have that effect. *Brackett* v. *Commonwealth,* 223 Mass. 119. *Commonwealth* v. *Nickerson,* 236 Mass. 281.

The Mystic River Corporation was authorized by St. 1855, c. 481, § 1, " to inclose, by a good and sufficient sea-wall, and to fill up the portion of flats," including those which these defendants have filled and built upon, and to extend " such docks as may be desired " as therein specified, and " to build warehouses on the above described premises, and to lay vessels at the sides and ends of the wharves and quays, and to receive wharfage and dockage therefor." That corporation was required by § 2 to excavate other flats and by § 3 to fill the flats described in § 1 to a designated height with material excavated from defined places. The whole work was to be done to the satisfaction of a commissioner appointed by the Governor, a power and duty devolved upon the Directors of the Port of Boston under St. 1911, c. 748, and vested in the Commission on Waterways and Public Lands under St. 1916, c. 288. By § 4 it was provided that " the structure and excavation by this act authorized shall be commenced within three years, and shall be completed within ten years after the passage of this act."

The Mystic River Corporation began the construction of its improvements within the time limited and has con-

tinued them from time to time. There has been extension of the time thus limited by several statutes, the last by St. 1893, c. 334, being until May 7, 1903.

3. The terms of St. 1855, c. 481, operated as a legislative grant subject to the terms and conditions therein set forth, and not as a mere revocable license. *Fitchburg Railroad* v. *Boston & Maine Railroad,* 3 Cush. 58, 87. *Bradford* v. *McQuesten,* 182 Mass. 80. Question arose in *Bradford* v. *Metcalf,* 185 Mass. 205, touching the nature of rights in some of the flats within this same area before May 7, 1903. It there was said, at pages 209, 210, " These rights had been granted by the Commonwealth to the Mystic River Corporation, had been attached to the lands, and had been held by the defendants and their predecessors as their own property . . . St. 1893, c. 334, was an extension of the right to fill the defendants' lands without paying for the displacement of tide water. . . . At least this last act of the Legislature should be treated as a release and a grant to them by implication of all rights which the Commonwealth might assert as to their filling these flats under authority of the earlier statutes, and subject to the requirements of those statutes."

4. The grant effected by St. 1855, c. 481, was upon the condition subsequent that it might be avoided if the filling was not made and the structures completed in the time limited as extended. It is manifest that a condition subsequent was created because there was a present grant in order to enable the Mystic River Corporation and its successors to enter upon the flats and erect structures and make the fill. Present rights were immediately vested in the Mystic River Corporation subject to be revoked if the contemplated work was not done within the time limited. The breach of that condition would not of itself render the grant void and revest the title in the grantor. There must be some definite act for the purpose of working a forfeiture for breach of such a condition. Private rights under conditions subsequent commonly are asserted by entry for breach, or by its equivalent, or by legal proceedings designed to secure possession. *Langly* v. *Chapin,* 134 Mass. 82. *Hayden* v. *Stoughton,* 5 Pick. 528. *Thompson* v. *Bright,* 1 Cush.

420. *Attorney General* v. *Merrimack Manuf. Co.* 14 Gray, 586, 612. *Guild* v. *Richards*, 16 Gray, 309, 317. *Fay* v. *Locke*, 201 Mass. 387, 389.

5. Where the Commonwealth is the grantor, it can take advantage of breach of a condition subsequent only by judicial proceedings or by a legislative declaration of forfeiture. That precise question does not appear hitherto to have arisen in this Commonwealth. The governing principle is settled by decisions of the Supreme Court of the United States. With reference to the manner of assertion of rights arising from breach of conditions subsequent, it was said in the leading case of *Schulenberg* v. *Harriman*, 21 Wall. 44, 63, 64, " If the grant be a public one it must be asserted by judicial proceedings authorized by law, the equivalent of an inquest of office at common law, finding the fact of forfeiture and adjudging the restoration of the estate on that ground, or there must be some legislative assertion of ownership of the property for breach of the condition, such as an act directing the possession and appropriation of the property, or that it be offered for sale." This principle was applied in *St. Louis, Iron Mountain & Southern Railway* v. *McGee*, 115 U. S. 469, and in *Bybee* v. *Oregon & California Railroad*, 139 U. S. 663, and to the attempted forfeiture of lands granted in aid of the construction of railroads to be completed on or before a specified date, *United States* v. *North Pacific Railway*, 177 U. S. 435, *Spokane & British Columbia Railway* v. *Washington & Great Northern Railway*, 219 U. S. 166, *Grand Trunk Western Railway* v. *United States*, 252 U. S. 112, 123. It follows that while a grant by the sovereign power is construed most strongly against the grantee, *Cleaveland* v. *Norton*, 6 Cush. 380, 383, 384, *Lynnfield* v. *Peabody*, 219 Mass. 322, 330, the grant in the case at bar did not expire by its own limitation.

6. The record fails to show any action by the Commonwealth sufficient to revest in itself title to that which was granted by c. 481. Requirement of a license under R. L. c. 96, § 16, was far short of such action. It was a stipulation of St. 1855, c. 481, § 3, that the work authorized by the act should be done to the satisfaction of a public officer to whose

functions the Directors of the Port of Boston and the Commission on Waterways and Public Lands in turn succeeded. Compliance with that requirement was simple conformity to the terms of the original grant. A bald declaration by a public board that compensation must be paid for displacement of tidewater did not constitute a termination of the rights under the grant to which the defendants succeeded.

If it be assumed, as argued by the Attorney General, that under the colony ordinance the fee of the flats had vested in the defendants or their predecessors in title as owners of the upland and that the only right remaining in the Commonwealth was that of public navigation, *Boston & Hingham Steamboat Co.* v. *Munson,* 117 Mass. 34, *Jubilee Yacht Club* v. *Gulf Refining Co.* 245 Mass. 60, the same result follows. The right nevertheless was one of which the Commonwealth must repossess itself by appropriate means.

7. The applications by the defendants for licenses under R. L. c. 96, and the acceptance of licenses do not make out a case for the plaintiff. They do not affect the defendants' rights under the grant. As already pointed out, these steps were in substance required by c. 481. Approval by the public board of structures to be erected in tidewater was a valid regulation. In each license there was a provision that nothing therein contained should be construed to impair the legal rights of any person.

The insertion in each license of the clause requiring payment for displacement of tidewater was in derogation of the grant by the Commonwealth and hence beyond the power of the public officers to demand as a condition of granting the license. The general doctrine is that conditions and terms inserted in a license by a public board not authorized or warranted by law are void. Even express acceptance of them by the licensee has been held to be ineffectual. *Keefe* v. *Lexington & Boston Street Railway,* 185 Mass. 183. *Selectmen of Wellesley* v. *Boston & Worcester Street Railway,* 188 Mass. 250, 253. *Selectmen of Clinton* v. *Worcester Consolidated Street Railway,* 199 Mass. 279, 285. *Regina* v. *Mann,* L. R. 8 Q. B. 235.

*Exceptions overruled.*
*Appeals dismissed.*