JOHN HASTINGS *vs.* WILLIAM C. GRIMSHAW.

Bristol.   October 30, 1890. — May 18, 1891.

Present: FIELD, C. J., W. ALLEN, C. ALLEN, & KNOWLTON, JJ.

*Riparian Rights — Statutory Grant — Deed — Boundary — Implied Rights.*

The St. of 1806, c. 18, giving to owners of lands adjoining Acushnet River the right to construct and maintain wharves and docks extending to the channel thereof, operated as a legislative grant of the title to the soil, and the water over it, between their lots and such channel; and, subject to the rights of the public, such an owner may sell and convey his land above high-water mark, or sell that and a part of the soil so covered with water, and retain his wharf and his dock, or any part of either of them.

The owner of adjoining lots on the west side of the Acushnet River, within the limits named in the St. of 1806, c. 18, § 1, who had constructed on one lot a wharf and on the other a dock, both extending to the channel of the river, conveyed a portion of the land by a boundary which plainly excluded the dock. Although various rights and privileges were expressly given in connection with the granted premises, none were thus given in the dock. *Held*, that under the deed no rights in the dock passed to the grantee, except perhaps a right of access to the property sold; and that a licensee of the grantee was liable in trespass to such owner for obstructing the same.

TORT for breaking and entering the plaintiff's close in New Bedford, described as a dock. Trial in the Superior Court, before *Staples*, J., who reported the case for the determination of this court.

There was evidence tending to prove the following facts. Before April, 1888, the plaintiff became the owner, under various

deeds, of two adjoining lots in New Bedford, partially submerged by water, situated between Prospect Street on the west and the Acushnet River on the east as shown on the plan, a sketch of the material portions of which appears in the margin. These lots were described in such deeds as extending easterly to the channel of such river, and were situated within the limits named in the St. of 1806, c. 18, § 1, by the terms of which owners of land on that river within such limits were authorized to erect wharves and docks extending to the channel of the river. Upon the northerly lot was a wharf called Hastings Wharf, which extended easterly to the channel of the river from the foot of a street or contemplated street called Grinnell Street, running at right angles with Prospect Street; and upon the southerly lot was the dock in question, which extended along the southerly side of the wharf and was bounded on the west by a structure made of piles and planking called on the plan " Edge of wooden structure," and on the east by the channel. The boundary line between the two lots was the southerly line of Grinnell Street extended, and formed the southerly edge of Hastings Wharf. The dock had been dredged to a width of one hundred feet from the wharf, but only the seventy feet nearest the wharf had been in actual use. On April 20, 1888, the plaintiff conveyed to one Wilcox a tract of land by a deed, which described the granted premises as beginning at a point in " Grinnell Street in the northwest corner of the lot to be described, and at the northeast corner of land of Jonathan Bourne, Jr., said point

beginning one hundred fifty four and $\frac{25}{100}$ feet east of the point of intersection of the south line of contemplated Grinnell Street with the east line of Prospect Street, thence easterly in the south line of said Grinnell Street to a point four hundred feet easterly from the point of intersection aforesaid of the south line of Grinnell Street and east line of Prospect Street, and to the easterly line or margin of the structure of piles and planking extending southerly from said south line of contemplated Grinnell Street; thence southerly by the easterly margin of said structure one hundred feet; thence easterly in a line parallel with the south line of grantor's wharf at the foot of said contemplated Grinnell Street, and one hundred feet south of said south line of said wharf, to the channel of Acushnet River. . . . Together with all rights in, to, and over said contemplated South Street and said contemplated Grinnell Street belonging or appertaining to said two last named lots of land. Also the right to take and use the water from the pipe or conduit now laid in and through said contemplated Grinnell Street easterly from Prospect Street. And the said grantor for himself, his heirs and assigns, covenants with the said grantee, his heirs and assigns, that he and they will never place or erect or suffer to be placed or erected any permanent structure or obstruction in, upon, or over the space or area now covered by water and included in the lines of the grantor's wharf on the north, the structure of piles and planking hereinbefore named on the west, the line parallel to the south line of the said wharf and one hundred feet south therefrom on the south, and the channel of Acushnet River on the east. Said space or area now affording the most convenient means of access by water to the premises herein conveyed to said grantee. And the said grantee covenants with said grantor for himself, his heirs and assigns, and to and with said grantor, his heirs and assigns, never to remove the stone wall or breakwater extending from the premises conveyed easterly into the Acushnet River." On the same day, Wilcox conveyed the same premises in like terms to the City Manufacturing Company. On or about May 1, 1889, the defendant, acting under a license of this company, brought into the dock floats, which he secured to the piling and thenceforth used, against the plaintiff's objection, as landing stages in his business of letting boats for hire; and this is the tort complained of by the plaintiff.

The defendant asked the court to rule, that, upon the evidence, the plaintiff was not entitled to recover, and also that the deeds from the plaintiff to Wilcox and from Wilcox to the City Manufacturing Company vested in the latter a title in fee to the water extending from the structure of piles easterly to the channel of the river and lying between the south line of Hastings Wharf and a line parallel thereto and one hundred feet distant, including the *locus in quo.* The judge refused so to rule, but ruled that the land deeded to Wilcox did not include the locus to the extent that it had been used by the plaintiff or his grantors as a dock, and directed a verdict for the plaintiff, and reported the case to this court.

If any of the rulings asked for by the defendant should have been given, the verdict was to be set aside, and a new trial ordered ; otherwise, the verdict was to stand.

*C. W. Clifford & H. H. Crapo,* for the plaintiff.

*E. L. Barney,* for the defendant.

KNOWLTON, J. In this case, it is unnecessary to consider particularly the deeds under which the plaintiff derived his title. It is enough to say, that, on April 20, 1888, he was the owner of the locus described in the declaration, so far as there could be private ownership of that property, and that he was also the owner of the land which he conveyed on that day to Thomas B. Wilcox, which was subsequently conveyed to the City Manufacturing Company, under whose license the defendant justifies the alleged trespass. The question presented is whether by that deed the plaintiff's rights in the property which was used as a dock passed to Wilcox, and, if not, whether after the conveyance of the adjacent land to low-water mark, or to a point below low-water mark, he could still retain a title in the dock between that land and the channel such as would enable him to maintain a suit for a trespass.

His title to the property used as a dock was originally acquired under the St. of 1806, c. 18, which is printed in a footnote to page 209 of Volume 108 of the Massachusetts Reports. Under that statute, the owners of land on Acushnet River in the neighborhood where his lot is situated are authorized " to erect, continue, and maintain wharves parallel with the line of their several lots, as they abut upon said river ; said wharves to extend to the channel of said river, if the owners of said lots

think proper"; and they are given like authority to provide docks within the same limits. In *Hamlin* v. *Pairpoint Manuf. Co.* 141 Mass. 51, is the following language in reference to this act: " This [statute] operated as a legislative grant to the owners of lots of an interest in the soil between their lots and the channel of the river. Whether it gave them an absolute fee without any restrictions, and whether, since the passage of the St. of 1866, c. 149, they are subject to the regulations of the Harbor Commissioners, and to what extent, it is not necessary to consider in this case. The act certainly gave them a possessory title for the purpose of building wharves, sufficient to enable them to maintain trespass if their rights are invaded." See also to the same effect *Haskell* v. *New Bedford*, 108 Mass. 208. This was an additional right° of property outside of the former land of each of the riparian proprietors, created by the statute in favor of those who then owned the lots. It was a title to the adjacent land, and to the water over it, subject to certain rights in the public. There is no good reason why a large lot held under such a title cannot be carved up and conveyed in different parcels, as flats which are held under a title of a similar kind and originating in a similar way may be separated from the land above and be sold in different parts. *Storer* v. *Freeman*, 6 Mass. 435. *Mayhew* v. *Norton*, 17 Pick. 357, 360. *Porter* v. *Sullivan*, 7 Gray, 441. See also, for adjudications in regard to similar titles, *Goodsell* v. *Lawson*, 42 Md. 348, 373; *Power* v. *Tazewells*, 25 Grat. 786; *Norfolk* v. *Cooke*, 27 Grat. 430; *Clement* v. *Burns*, 43 N. H. 609; *Fitzgerald* v. *Faunce*, 17 Vroom, 536, 596, 597.

We are of opinion that the plaintiff might, if he chose, sell the land above high-water mark, or sell that and a part of the land covered with water, and retain his wharf and his dock, or any part of either of them.

It is very clear that he did not intend to sell the dock. His deed to Wilcox described the granted premises by a boundary which plainly excluded the dock. Other rights and privileges were expressly given in connection with the property sold, and it is therefore implied that he did not intend to give any in the dock, except perhaps the right to pass over it to gain access to the property sold.

The plaintiff having a right to retain the dock for himself when he sold the adjacent land, and having intended to retain it, and having used apt words in his deed to express his intention as the owner of it, the defendant was a trespasser in the use which he made of it, the instructions of the court were correct, and the verdict was rightly returned for the plaintiff.

*Judgment on the verdict.*