Merrimack
No. 79-003

KENNETH A. DONAGHEY *& a.*

v.

WALTER S. CROTEAU *& a.*

May 9, 1979

*McSwiney, Jones & Semple*, of Concord (*Robert E. Bowers, Jr.*, orally), for the plaintiffs.

*Hatfield & Henderson P.A.*, of Hillsboro (*Leigh D. Bosse* orally), for the defendants.

GRIMES, J.   The issue in this declaratory judgment action to determine the location of and rights in a right-of-way and a wharf on Lake Sunapee is whether the trial court's decree to defendants of title to the wharf and certain rights in the land of plaintiffs is supported by the evidence and the law. We hold with slight modifications that it is.

In 1925, John A. Stevens owned a large tract of land on the eastern shore of Lake Sunapee in the town of Newbury. He subdivided his shoreline property into seventeen separate lots. By deed and plan, he established a common passageway or right-of-way leading to the shore and separating lots #13 and #14 along the southern boundary of lot #14. Stevens retained title to lot #14 until his death in 1927. The plaintiffs currently own lot #14 as well as the fee under the common passageway.

Defendant Walter Croteau's father, Joseph Croteau, purchased an inland lot from Stevens in 1923. By deed dated July 21, 1925, Stevens granted Croteau a right-of-way leading to the lake. The deed reads as follows: "A right-of-way over land of said grantor [Stevens] to a certain boathouse to be erected by said grantee [Croteau] on the shore of Lake Sunapee and on the shore of Lot #14." This right-of-way and the wharf which Joseph Croteau constructed instead of a boathouse are the subjects of the present dispute. In particular what is disputed is whether the right-of-way is over the southerly sixteen feet of lot #14 or over the common passageway between lots #13 and #14.

At his death in 1927, Stevens left his realty to his only daughter, Irene, who in turn conveyed lot #14 to Herbert D. Stevens (no relation to John A. Stevens) by deed dated January 18, 1933. Herbert Stevens soon thereafter entered into, and later recorded, a written agreement with Joseph Croteau concerning the right-of-way in question. The agreement states in pertinent part:

> That whereas said Croteau has a certain right-of-way by the conveyance of John A. Stevens . . . affecting to some extent Lot #14 . . . . Now therefore, for the purpose of defining and establishing what right-of-way shall be over said Lot #14, the two parties hereto . . . agree that [it] shall be the width of 16 feet and shall extend over said Lot #14 as follows: on the Southerly side of said Lot #14.

Joseph Croteau used the right-of-way and wharf he had constructed on the shore of lot #14 for the next twenty-nine years for recreational purposes such as boating, swimming and picnicking. Title in lot #14 changed hands several times during the period. At one point, an owner of lot #14 built a small shed on part of the southern sixteen feet of lot #14, but Croteau registered no complaint because he was able to use a part of the common right-of-way between lots #13 and #14 to get past the obstruction and thus to the wharf. In May 1962, Joseph Croteau sold his interest in his right-of-way and wharf to his son, defendant Walter Croteau. The plaintiffs purchased lot #14 in 1967.

The record indicates that for a time the plaintiffs and defendants were close friends. By agreement between them, the wharf was rebuilt and extended with their combined efforts. It is undisputed that the plaintiffs built some stone steps leading down to the water and that they improved the area generally, but as to the rest of the work, the parties are in dispute regarding who supplied what materials and did what work. Pleasant relations existed until the plaintiffs became concerned with the number of people using the wharf and with the defendants' parking their car on the sixteen-foot-wide strip between the shed and the shore in such a fashion as to block the plaintiffs' driveway.

The plaintiffs sought a declaratory judgment that defendants' right-of-way was confined to the common passageway between lots #13 and #14 and not over lot #14 and a declaration of the parties' respective interests in the way and wharf. Trial was before a Master (*Robert A. Carignan*, Esq.), who found the wharf to be owned wholly by the defendants. He found also that the defendants' right-of-way ran over lot #14, but that a portion of it running between the main road and the shed had been abandoned through lack of use and obstruction. The remaining portion of the way, between the shed and the shore, was found to have been retained as originally granted. The master concluded that defendants' right-of-way was an easement appurtenant to their nearby property, and that their rights in it were exclusive. The Superior Court (*Johnson*, J.) entered a decree in accordance with the master's findings and recommendation, and reserved and transferred plaintiffs' exceptions.

The decree of ownership of the wharf to the defendants raises a question previously unaddressed by this court: Consonant with the laws of riparian and littoral rights, may an owner of property abutting a navigable body of water convey ownership of a wharf separate from ownership of the littoral property upon which the wharf is built? In our opinion, the question must be answered in the affirmative.

Littoral rights are incidental property rights associated with ownership of lakeshore property. 5 R. POWELL, LAW OF REAL PROPERTY § 710 (1979). In New Hampshire, the right to wharf out to navigable depth ias long been recognized as a common-law littoral right. *See Heston v. Ousler,* 119 N.H. 58, 389 A.2d 536 (1979); *Clement v. Burns,* 43 N.H. 609, 617 (1862). The right to wharf out, however, like the right to appropriate riparian water or ice, *Concord Manufacturing Co. v. Robertson,* 66 N.H. 1, 25 A. 718 (1889), is severable from the abutting property itself. Whether the right is viewed as a "franchise," *State v. Knowles-Lombard Co.,* 122 Conn. 263, 265, 188 A. 275, 276 (1936), or as only an incidental property interest, "[t]he reason of the law does not forbid [the littoral owner] to sever, and sell or lease, the right he may not wish to exercise." *Concord Manufacturing Co. v. Robertson,* 66 N.H. at 20, 25 A. at 727; 2 H. TIFFANY, REAL PROPERTY § 667, at 723 (3d ed. 1939); *cf. Hoban v. Bucklin,* 88 N.H. 73, 184 A. 362 (1936) (prescriptive easement in nonlittoral owner to build and maintain wharf); *Hastings v. Grimshaw,* 153 Mass. 497, 27 N.E. 521 (1891) (retention of title in dock after transfer of littoral property). Notwithstanding a minority of authority to the contrary, *see, e.g.,* 6A AMERICAN LAW OF PROPERTY § 28.55, at 159 (A. Casner ed. 1954), we hold that the littoral right of wharfing out may be transferred separate from the ownership of the littoral property, subject of course to reasonable use, nuisance, and zoning limitations. *See Heston v. Ousler supra; Concord Manufacturing Co. v. Robertson supra.*

Turning to the decree of ownership issued by the trial court, we find it supported by the evidence. *Dove v. Knox Mt. Corp.,* 114 N.H. 278, 319 A.2d 640 (1974). The deed of July 21, 1925, from John Stevens to Joseph Croteau plainly grants to Croteau an easement of access to the lake benefiting Croteau's nearby property. The deed also grants a right to construct a boathouse. A wharf, being a structure with a similar purpose, could be found to have been substantially within the intention of the parties to the deed. Likewise, the record would support a finding that Stevens intended to pass ownership of the boathouse (or wharf) to Croteau. So far as the parties' legal rights in the wharf are

concerned, we are satisfied that the findings and recommendation of the master are supported by the law and the evidence.

■    The master's location of the defendants' right-of-way also finds support in the record. *Cragin v. Woollett*, 104 N.H. 202, 182 A.2d 457 (1962). That the way is over lot #14 and not over the common passageway between lots #13 and #14 is, if left uncertain by the original deed, made clear by the 1933 agreement between Herbert Stevens and Joseph Croteau. The fact that the wharf was built opposite lot #14 rather than opposite the common passageway between lots #13 and #14 is further evidence of the intention of the parties. Similarly, the continued use of at least a portion of the sixteen-foot right-of-way across lot #14, both by Joseph Croteau and later by the defendants, is evidence of the intended location of the way. *French v. Hayes*, 43 N.H. 30 (1861). The finding of partial abandonment is supported in the record and unquestioned by the parties. The master correctly found that the portion of the right-of-way between the shed and the shore had not been abandoned by the defendants. *See* 25 AM. JUR. 2d *Easements & Licenses* § 104 (1966); *cf. Lawlor v. Town of Salem*, 116 N.H. 61, 352 A.2d 721 (1976) (abandonment of preexisting nonconforming use).

■    The finding that the defendants have an exclusive right to the way is questionable, however, if it was intended to preclude use of the way by the plaintiffs or any other owner of lot #14. Nevertheless, during oral argument, the parties agreed that the owners of the underlying fee cannot be excluded from a reasonable use of the land over which the easement runs so long as that use does not interfere with the defendants' reasonable use of it. The defendants' right is exclusive only to the extent that plaintiffs and future owners of lot #14 may not grant other persons rights in the way. A reasonable construction of the 1925 deed and 1933 agreement, coupled with the parties' conduct for some fifty years, supports the conclusion that as to persons other than the owners of the servient estate (lot #14), defendants have an exclusive right in the unabandoned portion of their right-of-way. *See Cragin v. Woollett*, 104 N.H. 202, 182 A.2d 457 (1962); *French v. Hayes*, 43 N.H. 30 (1861).

■    The defendants' use of the right-of-way and wharf must, of course, be reasonable and must take into consideration both the contemplated use and changed circumstances. *See Sakansky v. Wein*, 86 N.H. 337, 169 A. 1 (1933). The Croteaus may not unreasonably disturb the plaintiffs' enjoyment of lot #14; nor should they bring unreasonable numbers of persons onto the dock. They must take care not to exceed the reasonable tolerance that can be expected of the plaintiffs

or any owner of lot #14 regarding use of the dock by defendants' friends and acquaintances and those of their children. It was not the intention of the 1925 deed to give the Croteaus a right to funnel large numbers of persons over their right-of-way to the wharf. The law can do no more than state that the use must be reasonable. The parties must be the ones in the first instance to carry out the mandate.

*Exceptions overruled.*

All concurred.