Personnel Appeals Board
No. 88-059

APPEAL OF JAMES F. CREMIN & a.

(New Hampshire Personnel Appeals Board)

March 6, 1989

*Upton, Sanders & Smith,* of Concord (*John K. McDonald* on the brief and orally), for the petitioners, James F. Cremin, David Harris, Thomas A. Bulcock, Joseph A. Hart, and Robert P. Jones.

*Stephen E. Merrill,* attorney general (*David S. Peck,* assistant attorney general, on the brief and orally), for the State.

SOUTER, J. Five investigators in the department of employment security appeal from a decision of the personnel appeals board, denying their claims for supplemental compensation under former RSA 99:2(c) (Supp. 1979) (repealed by Laws 1986, 135:1, III) for a period following their transfer to the office of the attorney general under RSA 7:13. We reverse.

In 1980, the five petitioners were employees of the department of employment security (DES), *see* RSA 282-A:107 to :137, with responsibilities that included investigating and collecting evidence

of fraud in the administration of the unemployment compensation laws and presenting such evidence in criminal prosecutions. On October 8 of that year, Governor Gallen acceded to a request of Attorney General Smith and issued Executive Order 80-10, requiring that all employees "engaged by the Department of Employment Security to do legal work including the General Counsel, all attorneys, and support staff" be transferred to the office of the attorney general pursuant to RSA 7:13. That statute, as then in effect, provided that:

> "Upon request of the attorney-general the governor is hereby authorized to transfer any employee authorized to do legal work, and all unexpended appropriations and funds allocated for the payment of such employee's salary, from any department or agency of the state to the office of the attorney-general whenever such action is deemed by the governor to be in the best interest of the state. Any such employee so transferred or employed by the expenditure of such funds and appropriations shall be directly responsible to the attorney-general and shall perform such services as the attorney-general may direct."

Laws 1950, ch. 5, part 5:1.

The petitioners were among the employees actually transferred, and no question has been raised either about the adequacy of the statute to authorize the governor's action or about the sufficiency of the order to place the petitioners under the attorney general's jurisdiction. The petitioners' offices were not, however, moved after the transfer of jurisdiction, and the volume and nature of their work, along with the compensation paid to them, remained unchanged throughout the period in question, which ended when the governor ordered their return to the administrative jurisdiction of DES as of July 1, 1981. No question has been raised about the governor's authority thus to reverse his initial action under RSA 7:13.

Sometime after July 1, 1981, the petitioners became aware of former RSA 99:2(c) (Supp. 1979) (since repealed):

> "The standard workweek for law enforcement employees shall be a basic 40-hour week. To the annual salary of such employees shall be added compensation equivalent to 8 hours per week or 416 hours per year. Law enforcement employees, for the purpose of this section, shall include liquor investigators, safety inspectors, motor vehicle investigators, probation officers, transportation inspectors,

investigators in the office of the attorney general, and all law enforcement employees of the department of resources and economic development, including, district fire chiefs and forest fire prevention and training officers, and forest and park enforcement officers within the bureau of off highway recreational vehicles."

Laws 1979, 434:55. The petitioners claimed entitlement to additional compensation for the transfer period under the terms of the statute, subject to credit for any overtime compensation actually paid to them during that time. When the attorney general denied their request for back pay, they brought an action in the superior court, which was dismissed for lack of subject matter jurisdiction. In accordance with our order affirming the dismissal, *see Cremin v. State*, No. 85-506 (June 12, 1986), the petitioners then pursued their claims before the personnel appeals board. RSA 21-I:46, :58 (Supp. 1987), which rendered a decision unfavorable to them on the ground that "the administrative transfer did not change either the hours or [the] work routine of the [petitioners] . . . ."

These findings are not contested in this appeal under RSA 541:6, and the issue before us is whether the board misread the statute and thus erred as a matter of law when it declined to find the petitioners entitled to the supplemental compensation. *See* RSA 541:13. We hold that it did.

Following the usual course of statutory analysis, *see Dover Professional Fire Officers Assoc. v. City of Dover*, 124 N.H. 165, 169, 470 A.2d 866, 868–69 (1983), we open the enquiry by asking whether the entitlement provisions of RSA 99:2(c) (Supp. 1979) (since repealed) were plain in their meaning and whether they encompassed the petitioners. To have been entitled to the benefit of the statute, an employee must have been within the class of "law enforcement employees" as specifically construed by the enumeration of sub-classes of departmental positions falling within its scope, which included "investigators in the office of the attorney general." The State does not argue that the petitioners failed to qualify as "law enforcement employees" by virtue of their responsibilities to detect and assist in the prosecution of criminal fraud. Nor does the State deny that the statutory description of the favored investigators as being "in the office of the attorney general" identified its intended beneficiaries by reference to the attorney general's jurisdiction to compensate, direct, and control them, powers expressly conferred upon him by RSA 7:13. And there is, finally, no suggestion that the petitioning investigators fell outside the scope of the statute merely because their offices remained at

DES headquarters and were therefore not physically "in" the attorney general's office.

Despite the facial applicability to the petitioners of the statutory language in the connotative and denotative senses just indicated, the State denies that the statute's provisions should be read as having plainly included them among its beneficiaries. To be sure, this is not a classic instance in which plain meaning is opposed by evidence of legislative history manifesting an intention that could have been expressed only in language different from the statutory terminology actually used. *See State Employees' Assoc. v. State*, 127 N.H. 565, 568–69, 503 A.2d 829, 832 (1986) (legislative history does not modify meaning of statutory language plain on its face). Rather, the State challenges the supposed plainness of meaning by appeals to statutory evolution and to other arguable indications of a statutory purpose too narrow to avail the petitioners.

The State puts great emphasis on the development of § 2(c), as, over the course of several legislative sessions, it was subjected to the accretion of departmental positions subject to its benefits. *See, e.g.*, Laws 1953, 266:12; Laws 1972, 60:73; Laws 1973, 421:1; Laws 1974, 29:1; Laws 1977, 388:1; Laws 1979, 434:55. The State argues that the failure ever to include DES investigators among the favored classes indicates a purpose to exclude them from application of the statute, on the principle that enumeration of those covered implies the exclusion of those not mentioned. *See, e.g., In re Gamble*, 118 N.H. 771, 777, 394 A.2d 308, 311 (1978). But this argument suffers from the fallacy of its unstated assumption, which is that after their transfer the petitioners still did not fall within the terms defining the class that actually was mentioned. On the contrary, however, we have seen already that the petitioners apparently did fall within those terms: they had law enforcement responsibilities, the funds necessary for their compensation became subject to the attorney general's requisition, and the employees themselves fell under his direction and control. Once it is thus recognized that the petitioners were within the ostensible scope of the terms "law enforcement employees [who are] investigators in the office of the attorney general," it becomes clear that the question is not whether the legislature ever enacted provisions favoring investigators in DES, but whether it excluded a class of investigators in the attorney general's office from a benefit seemingly provided to all such investigators in unqualified terms. Whatever may have been the reasons for failing to provide the benefit to investigators under DES control, there is no evidence of

a purpose to deny those benefits to some investigators under the attorney general's control, while providing them to others.

The State, nevertheless, advances further grounds for the adoption of a narrow construction, based on a variety of reasons to suppose that compensating the petitioners would exceed the scope of the statute's manifest purpose. The State argues that because the petitioners' duties did not change during their sojourn with the attorney general, they thus failed to qualify as employees with the heightened responsibilities meant to be compensated under § 2(c). But this ignores the attorney general's express statutory authority to direct that investigators in his office perform the work that the statute was intended to recompense. Even if we assume he made no such demand, it does not follow that the petitioners were outside the class of those from whom such work could have been required and to whom the statute's benefit was unqualifiedly extended.

Next, the State argues that the petitioners were the attorney general's employees only temporarily. To this, we can only demur that we have not been directed to any indication of a legislative purpose to condition the application of § 2(c) on the duration of a position's existence within the attorney general's office.

█ Finally, the State argues that petitioners' claim that they belonged within the class entitled automatically to additional compensation is belied by the fact that they received overtime pay for overtime actually worked during the period of the transfer (which they recognize should be credited against the amounts they now claim under the statute). Since, however, any employee is entitled to be compensated for overtime worked, the State's argument seems to be that the petitioners should be treated as having been outside the scope of the statutory purpose because the attorney general did not resort to the patent illegality of refusing them any compensation, or subsequent compensatory time off, for the overtime hours they actually worked. Although we will assume that some law enforcement employees were compensated inadequately prior to the application of § 2(c) to their positions, that is a far cry from recognizing a purpose to reward only those whom the State had unlawfully failed to compensate fully prior to the statute's application to them. In sum, we thus find nothing persuasive in any of the State's arguments from statutory purpose, which furnish no reason to deny that the apparent meaning of the statutory language is the statute's plain meaning, entitling the petitioners to the benefit they seek.

■ Given such a plain meaning, there is no foundation for the State's admonitions that the courts are not authorized to enact new law simply because the conditions under which the old law was passed have changed, and that the executive branch may not do indirectly what it is powerless to do directly. Rather, the point to recall is that comprehensive legislative language plain on its face applies alike to objects within the legislature's foresight and those coming into existence only after enactment. *Faulkner v. Keene*, 85 N.H. 147, 158, 155 A. 195, 202 (1931). This rule is the precondition not only of legislative power to deal with the future as well as the present, but of legislative responsibility for the plain language by which that power is exercised. If the result of applying this rule is what the State has described in this instance as a windfall to the petitioners, it is no exorbitant price for ensuring that the executive and judicial branches concede the legislature's power to act within its constitutional purview, and for affirming the legislature's responsibility for the consequences of what it plainly provides.

*Reversed.*

All concurred.