## In re GRAND BUILDERS, INC., Debtor.

### Bankruptcy No. 83–1800–BM. Motion No. 90–7308M.

United States Bankruptcy Court, W.D. Pennsylvania.

Dec. 17, 1990.

David K. Rudov, Rudov & Stein, Pittsburgh, Pa., for movant/Jeffrey Mondell.

Gary L. Smith, Pittsburgh, Pa., Chapter 7 Trustee.

Mary M. Boyd–Morin, Pittsburgh, Pa., consumer depositor/objector.

William A. Hutton, Pittsburgh, Pa., Priority Wage claimant/objector.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Before the Court is a document titled *"Motion For Reconsideration Of Claim Of Jeffrey Mondell Which Was Denied Without Notice and Hearing"* in which claimant seeks to have vacated an order subordinating his priority claim for unpaid wages to the claims of other unsecured creditors. Mondell contends that his right to procedural due process was violated in that his claim was subordinated without prior notice and opportunity to be heard. He also maintains that the order should be vacated because the factual basis upon which his claim was subordinated is incorrect.

Basically, Mondell acknowledges that the District Attorney for Allegheny County, Pennsylvania, was prepared to indict him. In an effort to avoid prosecution he agreed to return deposits to the various creditors in exchange for the District Attorney's agreement not to pursue the criminal action and the satisfaction of that class of debt. Accordingly, Mondell argues this objecting creditor has been paid and has no standing to provide this information to the Court.

The motion for reconsideration will be denied for reasons set forth below.

### I

### FACTS

Grand Builders, Inc. ("debtor") filed a voluntary Chapter 7 petition on August 15, 1983. The petition, which identifies Jeffrey Mondell as the sole principal of debtor, was signed by him in his capacity as President of debtor.

The schedules appended to debtor's bankruptcy petition list a total debt of $154,-411.33, of which $129,426.00 was owed to general unsecured creditors. Schedule A–1 lists Mondell as having a priority claim for

unpaid wages in the amount of $2,000.00 and lists Mary Boyd–Morin as having a priority claim of $800.00 for remodeling work which was never done. In addition to Boyd–Morin, seventeen (17) others are listed with similar claims between $200.00 and $900.00.

A trustee was appointed on September 7, 1983. Little or nothing was done by the trustee for almost six (6) years until May 7, 1990, when the Court ruled him to file final documentation by June 6, 1990. On June 6, 1990, the trustee submitted a proposed distribution to creditors. The total amount available for distribution is $6,946.04. Of that amount, $1,958.73 is allocated to administrative expenses, $4,945.56 to priority prepetition wages, and $41.75 to consumer deposits. No distribution to general unsecured creditors is contemplated by the trustee. Of the amount to be distributed for prepetition wages, $2,000.00 is to be distributed to Mondell, which approximates thirty percent (30%) of the total available to all creditors. In addition, the trustee proposed distributing $5.75 to Boyd–Morin as her *pro rata* share of the distribution to consumer deposit creditors.

The summary sheet appended to the proposed distribution specifically stated that the amounts to be paid are subject to change and were contingent upon the court's disposition of any objections to distribution filed by creditors.

On September 19, 1990, Boyd–Morin filed a timely *pro se* objection to the trustee's proposed distribution of $2,000.00 to Mondell. She alleged that Mondell, an insider of debtor, had withdrawn $30,000.00 from debtor in the year prior to debtor's bankruptcy filing. Boyd–Morin argued that any further distribution to Mondell would be inequitable to other creditors and asked that Mondell's claim be disallowed or subordinated to all other priority claims. Although Boyd–Morin filed her objection with the court, no notice of the objection was sent to Mondell.

A hearing on the trustee's proposed distribution was held on September 25, 1990. Boyd–Morin argued that the proposed distribution to Mondell should be disallowed or subordinated to the claims of all consumer depositors who, shortly before the filing of the bankruptcy petition, had deposited money with debtor for home remodeling which was never done. Neither Mondell nor his attorney was present at the hearing.

On September 28, 1990, an Order of Court was issued which subordinated and/or disallowed Mondell's priority wage claim to the claims of other unsecured creditors pursuant to 11 U.S.C. §§ 502 and 510. The court held that it would be inequitable to allow Mondell's claim to be paid when the claims of other unsecured creditors were not being paid.

The September 28, 1990 order specifically directed the trustee to distribute the $2,000.00 on a *pro rata* basis to creditors having unsecured claims, and advised that reconsideration should not be requested as it would not be granted. The Court was obviously weary of the constant stream of motions for reconsideration filed by non-attending litigants. Mondell neither sought a stay of nor appealed the order of September 28, 1990. Rather, on October 5, 1990, he filed the motion for reconsideration now before the court. For reasons known only to the trustee, said trustee considered counsel's motion comparable to a court-ordered stay. No distribution has been made to any creditor.

A hearing was held on the motion for reconsideration on December 6, 1990. Mondell's counsel appeared and was given a second opportunity to argue the matter and to present any evidence he deemed appropriate. Counsel offered legal argument; no testimony or other evidence was offered.

## II

### ANALYSIS

*Motion For Reconsideration*

■ A motion for reconsideration is not a vehicle for raising issues or citing authorities a party could or should have presented prior to the court's ruling. It is not a vehicle for rehashing arguments pre-

viously made or for refuting the court's prior ruling. *Lelsz v. Kavanagh,* 112 F.R.D. 367, 371 (N.D.Tex.1986). A motion to reconsider is appropriate where the court has clearly misunderstood a party, has made a decision outside the issues presented by the parties, has made an error not of reasoning but apprehension, or where there has been a significant change in the law or the facts since the court's prior ruling. *Above The Belt, Inc. v. Bohannon Roofing, Inc.,* 99 FRD 99, 101 (E.D.Va.1983).

Mondell's first argument for reconsideration is that his right to procedural due process was violated in that he was not given notice and reasonable opportunity to be heard prior to the court's ruling on September 28, 1990. Specifically, he contends that Boyd–Morin's objection to his claim was sustained by the court without prior notice or a hearing. This contention is without merit.

Procedural due process imposes constraints on governmental decisions which deprive a person of "liberty" or "property" within the meaning of the Due Process Clause of the Fifth and Fourteenth Amendments. *Mathews v. Eldridge,* 424 U.S. 319, 332, 96 S.Ct. 893, 901, 47 L.Ed.2d 18 (1976). The fundamental requirement of due process is an opportunity to be heard "at a meaningful time and in a meaningful manner". *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965). Consequently, some form of hearing is required before one may be finally deprived of a property interest. *Mathews,* 424 U.S. at 333, 96 S.Ct. at 902.

Unlike certain legal principles, however, due process is not a technical concept having a fixed content in relation to time, place and circumstances. *Cafeteria Workers v. McElroy,* 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961). It defies any notion of an invariant procedure which applies to every conceivable situation. The procedures required by due process may vary from situation to situation. *Walters v. National Ass'n of Radiation Survivors,* 473 U.S. 305, 320, 105 S.Ct. 3180, 3189, 87 L.Ed.2d 220 (1985). Such flexibility is in-

tended in part to permit alternative and varied means of dispute resolution. *Walters,* 473 U.S. at 326, 105 S.Ct. at 3192.

Due process does *not* require that "the procedures used to guard against an erroneous deprivation ... be so comprehensive as to preclude any possibility of error". *Mackey v. Montrym,* 443 U.S. 1, 13, 99 S.Ct. 2612, 2618, 61 L.Ed.2d 321 (1979). Rather, due process in this instance required "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and to afford them an opportunity to present their objections. The notice must be of such nature as reasonably to convey the required information". *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). The United States Constitution requires only a reasonable assessment of "the practicalities and peculiarities" of the situation. *Id.*

■ The circumstances surrounding this matter indicate that Mondell's due process rights were not violated.

Mondell had received notice of the scheduled hearing on the trustee's proposed distribution and was aware from the notice that any objections thereto would be heard at that hearing. On September 4, 1990, notice was sent by the Clerk of Bankruptcy Court to all interested parties—including Mondell—of the hearing set for September 25, 1990. The determination as to the propriety of the trustee's proposed distribution was the sole purpose of the hearing. Objectors to same had no previous opportunity to voice their position to the Court.

In addition, Boyd–Morin's objection was filed with the Clerk of Court on September 18, 1990, and was part of the public record of the case. Accordingly, Mondell had an ability to know that an objection to the proposed distribution as it pertained to him had been filed and that the objection would be heard at the hearing on September 25, 1990.

Had Mondell been present at the hearing and asked to be heard on the matter, the court would have granted him ample opportunity to respond. The fact that Mondell

was not heard on the matter was the result of his own failure to attend the hearing, and was not the result of a lack of due process.

█ Moreover, even if Mondell's due process rights had been violated, any defect in the procedure employed was cured at the hearing on his motion for reconsideration held on December 6, 1990. Mondell was accorded the opportunity at that time to respond to Boyd–Morin's objection and to present any evidence he deemed appropriate.

█ Mondell also argues that the motion for reconsideration should be granted and the order vacated because the factual predicate on which the court sustained Boyd–Morin's objection is erroneous.

Boyd–Morin had argued that it would be inequitable to allow distribution to Mondell when he had already withdrawn $30,000.00 from debtor in the one-year period prior to bankruptcy. This argument was bolstered by the fact that the priority consumer deposit creditors were scheduled to receive less than one percent (1%) of their claims.

Mondell points out that he *personally* made full restitution to all of the consumer deposit creditors. According to Mondell, the supposed inequity of making distribution to him in full vanishes once this circumstance is taken into account.

This argument, like the previous one concerning due process, is without merit.

All of the deposits by the consumer deposit creditors had been solicited by Mondell for home remodeling that debtor ostensibly was to perform. The remodeling was not done as had been promised and the deposits were not refunded by debtor.

Each of the consumer deposit creditors had filed criminal complaints against Mondell and debtor in which they alleged improper disposition of funds and theft by deception, in violation of §§ 3927 and 3922 of the Pennsylvania Crimes Code.

On December 5, 1983, nearly four (4) months after debtor had filed its Chapter 7 petition, the District Attorney instituted criminal proceedings against Mondell, t/d/b/a Grand Builders, Inc.

On May 4, 1984, Mondell made full restitution to each of the eighteen (18) consumer deposit creditors in the full amount of their deposits. The total amount of the restitution was $20,030.00. A check in the amount of $800.00 was issued to Boyd–Morin and was negotiated by her shortly thereafter. Checks also were issued to and negotiated by the remaining seventeen (17) consumer deposit creditors whom Mondell had allegedly defrauded. In consideration of the restitution by Mondell, each consumer deposit creditor, including Boyd–Morin, released their criminal claim against Mondell and assigned to Mondell their right to distribution of bankruptcy estate assets. The District Attorney agreed to drop all criminal charges against Mondell after he made complete restitution.

The fact that Mondell personally made restitution and in turn received an assignment of the claims of these consumer deposit creditors does *nothing* to change this court's conviction that it would be inequitable to permit his priority wage claim to be paid in full while general unsecured creditors (as opposed to consumer depositors) would receive nothing at all.

Little or no genius is required to discern that the above creditors brought criminal charges against Mondell because he had diverted their deposits from the debtor to his own personal use. Had Mondell not done so, in all probability, debtor would not have had to file for bankruptcy. Had Mondell not done so, all or a portion of the $20,030.00 in deposits would have been estate property and thus available for distribution to creditors.

Unfortunately, the distribution proposed by the trustee makes no provision for distribution to non-priority, general unsecured creditors. Since it is likely that no funds are available for distribution to this class of creditors as the result of Mondell's reprehensible conduct, it would be inequitable to allow him to receive either his priority wage claim or the *pro rata* distributions to

the consumer deposit creditors.[1]

The trustee is to make distribution forthwith unless this Order is stayed by a court of competent jurisdiction. No distribution is to be made to Mondell either as a priority wage claimant or as assignee of the consumer deposit creditors. Distribution of the $2,000.00 which the trustee proposed to make to Mondell as well as a copy of this Memorandum and Order is to be made instead to other unsecured creditors.

We are mindful of the fact that the transmittal of this Memorandum as well as the checks will place an additional burden and personal cost on the trustee. We deem this burden to be a reminder to this trustee that he must fulfill his duties promptly and, unless stayed, he must comply with Court orders.

An appropriate Order will be issued.

### ORDER OF COURT

AND NOW at Pittsburgh in said District this 17th day of December, 1990, in accordance with the accompanying Memorandum Opinion of this same date, it is ORDERED, ADJUDGED and DECREED that the motion for reconsideration filed by Jeffrey Mondell be and is hereby DENIED.

IT IS FURTHER ORDERED that the trustee make distribution forthwith in accordance with the directives in the accompanying Memorandum Opinion.

---

**1.** This conclusion is bolstered by Mondell's admission that he had no written employment contract with debtor. A substantial question remains whether Mondell was a paid employee of debtor or was withdrawing funds from it as its sole principal.