**FDIC**

v.

**Robert CAIA, et al.**

**No. C–92–333–L.**

United States District Court,
D. New Hampshire.

July 19, 1993.

Steven A. Solomon, Backus, Meyer & Solomon, Manchester, NH, for plaintiff.

Robert A. Shaines, Shaines & McEachern, P.A., Portsmouth, NH, for defendants.

## ORDER ON MOTION FOR RECONSIDERATION

LOUGHLIN, Senior District Judge.

Before the court is defendants' Motion for Reconsideration (doc. no. 26) in which defendants seek to have the court vacate an injunction, issued by the court on January 22, 1993, to the extent that it relates to moorings located in the waters adjacent to the Beacon Marina property described below. Following are the facts that are relevant to the acquisition and subsequent use of the moorings.

On or about October 7, 1988, the defendants Robert Caia, Ellen Caia, and Robert Caia as Trustee of the Cass Marina Trust entered into an exchange agreement with Twin State Development Associates ("Twin State") whereby a parcel of real estate known as Beacon Marina was transferred to Twin State in exchange for properties owned by Twin State that are not relevant to the disposition of this matter. Included in the exchange agreement is the grant of an easement to the defendants "for the passage of persons, vehicles trailers and marine equipment from Route 103 to and over the boat launching ramp for the purpose of accessing Lake Sunapee to launch and remove boats of all descriptions from Lake Sunapee." (Doc. no. 26, Motion for Reconsideration, Exhibit B, p. 2).

The exchange agreement is silent as to the existence or ownership of the moorings since the permit was issued after execution of the exchange agreement. (Doc. no. 26, Exhibit C). There is nothing in the record other than the letter sent by Attorney Michael Feeney on behalf of Beacon Marina, Inc. that establishes that Beacon Marina, Inc. has property rights that are a necessary prerequisite to the issuance of a mooring permit. Other property rights are listed in the Feeney letter however, the court will focus on the alleged easement interest.

When seeking reconsideration of a court's order, a movant undertakes a very substantial burden. *In re Mortgage Inves-*

*tors Corp.*, 136 B.R. 592, 597 (Bankr.D.Mass. 1992).

A motion for reconsideration is not a vehicle for raising issues or citing authorities a party could or should have presented prior to the court's ruling. A motion to reconsider is appropriate where the court has clearly misunderstood a party, has made a decision outside the issues presented by the parties, has made an error not of reasoning but apprehension, or where there has been a significant change in the law or the facts since the court's prior ruling.

*In re Mortgage Investors*, 136 B.R. at 597 (quoting *In re Grand Builders, Inc.*, 122 B.R. 673, 675 (Bankr.W.D.Pa.1990) (citations omitted)). Unless manifest errors of fact or law can be shown, reconsideration of a court's order is inappropriate. *Id.* (citing *In re Oak Brook Apartments*, 126 B.R. 535, 536 (Bankr. S.D.Ohio 1991)).

Upon reconsideration, the court will stand by its original decision in finding that Bob's Beacon Marina, Inc. does not own any property rights in the easement. However, by looking to the law of easements as developed in the State of New Hampshire, the court is of the opinion that Bob's Beacon Marina, Inc. does have *use rights* of the servient estate within the limitations of the easement as granted.

■ There is no question that the interest granted in the exchange agreement is an appurtenant easement which "is a nonpossessory right to the use of another's land. It is an incorporeal right generally created for the purpose of benefitting the owner of the dominant estate ... *as the possessor* of such estate; it runs with the land, is incapable of existence separate and apart from the dominant tenement, and is inheritable." *Quality Discount Market Corp. v. Laconia Planning Bd.*, 132 N.H. 734, 739, 571 A.2d 271 (1990). The conveyance of an easement is, in law, the grant of reasonable use. *Chapman v. Newmarket Mfg. Co.*, 74 N.H. 424, 68 A. 868 (1908). Use of a right-of-way over the land of another must be reasonable and must take into consideration the contemplated uses and any changed circumstances. *Donaghey v. Croteau*, 119 N.H. 320, 324, 401 A.2d 1081

(1979). It is well settled that " '[t]here is no presumed grant of a right to exercise [an] easement in an unnecessary and unreasonable manner.... The right of [an] easement owner and the right of the landowner are not absolute, irrelative, and uncontrolled, but are so limited, each by the other, that there may be a due and reasonable enjoyment of both.' " *Chapman*, 74 N.H. at 425, 68 A. 868 (quoting *Olcott v. Thompson*, 59 N.H. 154, 156 (1879)).

■ When looking to the language of the easement as granted, it is crystal clear that use of the easement for launching and removing boats which may ultimately be attached to the moorings is within the contemplated use of the easement and is furthermore, in the court's opinion, a reasonable use. Taking into consideration the limited number of moorings and the fact that the shorefront property is used as a marina, that use of the launching ramp as access to the moorings, absent evidence to the contrary, will not unduly burden the servient estate held by plaintiff.

The defendants are well within their rights, subject to certain limitations, to allow other persons or entities to use the launching ramp which is subject to the easement. *See Donaghey*, 119 N.H. at 324, 401 A.2d 1081. With regard to the limitations, defendants must limit the number of individuals using the right-of-way to a reasonable number and must take care to ensure that the amount of use does not exceed plaintiff's reasonable tolerance as owner of the servient estate. *Id.*

The basis for the court's present ruling which reverses its earlier ruling is founded upon a mistake of law that resulted by a misapplication of the word "shorefront property" to the applicable mooring statutes. This mistake was discovered after reviewing plaintiff's opposition to the motion for reconsideration.

■ The crux of this matter involves interpretation of N.H.Rev.Stat.Ann. § 270:61 II(b). There are no New Hampshire cases that have interpreted this statute. Although a federal district court is bound by the construction given a state statute by the highest court of the state, when the statute has not

been construed by the state courts, the federal district court has the power to interpret the statute for the first time. *United States v. Certain Parcels of Land, etc.*, 67 F.Supp. 780, 798 (D.C.Cal.1946); *In re Frost*, 111 B.R. 306, 310 (Bnkr.C.D.Cal.1990). In construing a state statute that has not been construed by the state's highest court, the federal court must interpret the statute as would the state's highest court if confronted with the same issue. *Anderson v. Employers Ins. of Wausau*, 826 F.2d 777, 779 (8th Cir.1987); *Joseph E. Seagram & Sons, Inc. v. Conoco, Inc.*, 519 F.Supp. 506, 511 (D.C.Del.1981); *West v. Cole*, 390 F.Supp. 91, 98, n. 4 (N.D.Miss.1975). When interpreting a state statute that has not been construed by the state courts, the federal court is to apply the same principles of statutory construction that would be used by the state courts. *Thomas v. Reliance Ins. Co.*, 617 F.2d 122, 125 (5th Cir.1980); *United States v. Guyette*, 382 F.Supp. 1266, 1268 (E.D.Va. 1974).

In New Hampshire, statutory interpretation requires the court to "look first to the statutory language itself, *In re John Kevin B.*, 129 N.H. 286, 288, 525 A.2d 281, 282–83 (1987), and to construe the law in a manner consistent with its plain meaning. *Theresa S. v. Superintendent of Youth Dev. Center*, 126 N.H. 53, 55, 489 A.2d 592, 593 (1985)." *Penrich, Inc. v. Sullivan*, 136 N.H. 621, 623, 620 A.2d 1037 (1993). The plain meaning of the words used in a statute is determined from the common and approved usage of the language. *State v. Johnson*, 134 N.H. 570, 575–76, 595 A.2d 498 (1991). In determining the plain meaning, the court must look to the statute as a whole. *In re Guardianship of Raymond E.*, 135 N.H. 688, 690, 609 A.2d 1220 (1992) (citing *Petition of Jane Doe*, 132 N.H. 270, 277, 564 A.2d 433 (1989)). A literal interpretation is not placed on a phrase when doing so removes it from the context of the whole. *Johnson*, 134 N.H. at 576, 595 A.2d 498 (citing *State ex rel. Fortin v. Harris*, 109 N.H. 394, 395, 253 A.2d 830 (1969)). Nevertheless, the court shall not modify the meaning of a statute that is plain on its face. *Id.* (citing *Appeal of Cremin*, 131 N.H. 480, 483, 554 A.2d 1298 (1989)). If the statutory language is clear and unambiguous, reference need not be made to the legislative history in order to further reveal the legislative intent behind the statute. *Id.* (citing *Chroniak v. Golden Investment Corp.*, 133 N.H. 346, 351, 577 A.2d 1209 (1990)). If the language is found to be ambiguous, reference is made to the legislative history. *Snyder v. New Hampshire Sav. Bank*, 134 N.H. 32, 33, 592 A.2d 506 (1991).

In order to obtain a mooring permit, an individual must establish, among other requirements, that the individual has legal access over land to the mooring. N.H.Rev. Stat.Ann. § 270:61 II(b) (Equity Supp.1991). The phrase "legal access over land to the moorings" is not defined by the statute. Another relevant statutory provision prohibits the placement of more than one mooring adjacent to any shorefront property regardless whether individuals have legal access over the shorefront property unless a special exception is granted pursuant to N.H.Rev. Stat.Ann. § 270:65 or a mooring field or area is permitted pursuant to N.H.Rev.Stat.Ann. §§ 270:67 or 270:68. N.H.Rev.Stat.Ann. § 270:61 III (Equity Supp.1991).

Plaintiff initially states that moorings are permitted only in areas adjacent to shorefront property in which the permittee has legal access over land to the moorings. (Doc. no. 27, Objection to Motion for Reconsideration, attached Memorandum of Law, p. 4). This statement is made in reference to the provisions found in N.H.Rev.Stat.Ann. § 270:61 II(b) and III. Plaintiff is certainly correct with regard to paragraph III as the statement tracks the language used by the General Court. With regard to paragraph II(b), the correctness of the statement is not readily apparent since the paragraph does not mention as a requirement that a mooring must be adjacent to shorefront property. Nevertheless, the court is of the opinion that it is an implicit requirement of paragraph II.

Plaintiff next recites the definition of "shorefront property" as found in N.H.Rev. Stat.Ann. § 270:59 VIII which provides in pertinent part that:

"Shorefront property" means any property recognized as a legal building lot by a municipality, having shore frontage on

public waters, including a lot on public waters that is divided by a road so that the buildable portion of the lot is on the opposite side of the road from the public waters. Shorefront property shall not mean a deeded right-of-way, nor shall it mean lots not contiguous to the shore with any other type of legal shorefront access.

After reciting a redacted version of this definition, plaintiff states that:

[i]n addition, RSA 270:61(III) (supp.) permits only one mooring "adjacent to any shorefront property", except as provided in RSA 270:65, 67 or 68 (supp.). The exceptions allow for mooring fields and increase the number of permitted moorings, but do not change the requirement that all mooring permits be issued in conjunction with adjacent shorefront property. Therefore, as the greatest interest the Defendants have to shorefront property is a deeded right-of-way, they do not have "shorefront property" pursuant to RSA 270:59(VIII) (supp.)[.]

Defendants place great reliance on N.H. RSA 270:61(II)(c) (supp.) which requires that to obtain a mooring permit a party must show it has "legal access over land to such mooring". Defendants assert that their easement meets this requirement, notwithstanding RSA 270:59(VIII) (supp.) which expressly excludes a deeded right-of-way (or easement) from the definition of shorefront property.

(Doc. no. 27, Memorandum of Law at 4–5). Having tediously reviewed this passage, the court finds that plaintiff has made an assertion that is not supported by the language of the relevant statutory provisions. In fact, the language of the provisions contradict plaintiff's assertion.

As can be discerned by the above referenced passage from plaintiff's memorandum, plaintiff contends that an easement which is clearly a type of "legal access over land" must meet the definition of "shorefront property" in order to meet the requirement found in paragraph II(b). In essence, plaintiff has replaced the "legal access over land" language with the term "shorefront property" which by definition does not include any deeded right-of-way such as an easement.

There is no justification for equating the term "shorefront property" with the phrase "legal access over land to the moorings". Although legal access is not defined, taking into account the nature of moorings as anchoring posts for boats, the obvious scarcity of shorefront property and the provision that allows for mooring fields, equating the meaning of the term "shorefront property" with the meaning of the phrase "legal access over land to the moorings" is too restrictive an interpretation to the term "legal access" as opposed to legal ownership. The word "access" is defined as "the ability, right, or permission to [ ], enter ... or use[.]" The Random House Dictionary of the English Language, p. 11 (Random House 2nd ed. 1987). This definition aptly describes one of the characteristics of nonpossessory interests in land of which easements are a subcategory.

▬▬▬ It is common knowledge that nonpossessory interests in land concern the *use* of land. Moreover, § 270:61(III) states that "no more than one mooring shall be permitted adjacent to any shorefront property. This limitation shall apply regardless of the uses or permitted uses, number of owners or others with legal access, or type of ownership of that property...." By following the phrase "number of owners" with "others with legal access" and adopting the interpretation advanced by the FDIC, the second phrase would merely repeat the meaning of the first phrase therefore rendering the second phrase redundant. An elementary principle of statutory construction is that the legislature is presumed not to use unnecessary, duplicative language. *State v. Powell*, 132 N.H. 562, 568, 567 A.2d 568 (1989) (citation omitted). The words of a statute are to be given effect such that there is an absence of redundancy. *Merrill v. Great Bay Disposal Service, Inc.*, 125 N.H. 540, 543, 484 A.2d 1101 (1984) (citing *State v. Tardiff*, 117 N.H. 53, 56, 369 A.2d 182 (1977)); *see* 2A C. Sands, Sutherland Statutory Construction § 47.17 at 103 (4th ed. 1973). The court will not place such an interpretation on the meaning of the statutory language if it gives rise to such an illogical result. All that is required to obtain a moor-

ing permit is a showing that the party seeking the permit has legal access over land to the mooring, N.H.Rev.Stat.Ann. § 270:61 II(b) (Equity Supp.1991); ownership of shorefront property need not be demonstrated.

Plaintiff next attacks the easement based on the language used in the deed that defines the easement. Specifically, plaintiff asserts that use of the launching ramp is limited to launching and removing boats. (Doc. no. 27, Memorandum of Law at 5–6). It is further asserted that the easement grants no rights to use the ramp for access to and from the moorings where boats are attached but from which boats are neither launched nor removed. *Id.* By raising this argument, plaintiff brings into question the meaning of the language of the easement and its intended scope. Although the document used to evidence the easement is not a deed duly recorded in the appropriate registry of deeds, it is sufficiently akin to a deed so that the court will apply the analytical process utilized by the New Hampshire state courts to interpret and construe easements granted in deeds.

█ It is a settled point of law that the intent of the parties concerning the grant of an easement is a matter of law for the court to decide. *Bisson v. Laconia Invest. Properties, Inc.,* 131 N.H. 704, 707, 559 A.2d 1338 (1989) (citing *Thurston Enterprises, Inc. v. Baldi,* 128 N.H. 760, 765, 519 A.2d 297 (1986)). The intent of the parties is determined at the time the deed granting the easement was executed. *Id.,* 131 N.H. at 706–707, 559 A.2d 1338 (citing *Thurston,* 128 N.H. at 765, 519 A.2d 297). "In construing the language of the deed [giving rise to the easement,] 'the finder of facts must place himself as nearly as possible in the position of the parties at the time of the conveyance and gather their intention in light of the surrounding circumstances.'" *Robbins v. Lake Ossipee Village, Inc.,* 118 N.H. 534, 536, 389 A.2d 940 (1978) (quoting *Frew v. Dasch,* 115 N.H. 274, 278, 339 A.2d 18 (1978)). Though the court's interpretation of the parties' intent regarding the easement is controlled by the clear and unambiguous terms of the instrument giving rise to the ease-

ment, the law may imply supplemental rights. *Dumont v. Wolfeboro,* —— N.H. ——, ——, 622 A.2d 1238, 1241 (1993) (citing *Sakansky v. Wein,* 86 N.H. 337, 339, 169 A. 1 (1933) (other citation omitted)).

█ In this case, plaintiff is contending in slightly different terms that use of the launching ramp to launch or remove boats that are tied to the moorings is an increased use beyond the contemplated use of the easement. When the question whether an increased use or a different use of a right-of-way or easement is presented, the court looks to the reasonableness of the use to determine its permissibility. *Nadeau v. Durham,* 129 N.H. 663, 667, 531 A.2d 335 (1987). To make this determination, the court applies the rule of reason first enunciated in *Sakansky v. Wein,* 86 N.H. 337, 169 A. 1 (1933) which " 'is a rule of interpretation. Its [function] is either to give a meaning to words which the parties or their predecessors in title have actually used, ... or else to give a detailed definition to rights created by general words either actually used or whose existence is implied by law.' " *Nadeau,* 129 N.H. at 667, 531 A.2d 335 (quoting *Sakansky,* 86 N.H. at 339, 169 A. 1).

Before making an analysis of the easement in question, the court will recite the facts and holding of the *Robbins* case as it provides sound instruction for resolution of the issue *sub judice.* In *Robbins,* the court was confronted with an easement that provided a right-of-way to a beach that was located on a parcel of real estate conveyed by the owners of the dominant estate. Attached to the grant of the easement was a condition that the grantee (servient estate owner) could place restrictions on the easement provided the restrictions were duly recorded by a date certain. The *Robbins* court upheld the lower court's findings that the alleged restrictions were not recorded timely and that the parties intended that the dominant estate would retain access to, as well as use of, the beach based on the rationale that retention of the right of access to the beach without retention of the right to use the beach would be meaningless.

In similar fashion, defendants in the present case retained a right to access the lake via the boat launching ramp. Plaintiff interprets the easement to allow use of the boat launching ramp solely to either launch or remove boats from the lake. Concededly, this interpretation literally tracts the language used in the easement. However, by following the mandates of the *Frew* and *Sakansky* cases which have been consistently followed in New Hampshire as well as seeking guidance from the *Robbins* case, this court reaches a different result.

It is an uncontested fact that the permit for the moorings was obtained after the grant of the easement. Reliance on this fact alone could lead the court to the conclusion that use of the launching ramp to access the moorings was not within the contemplation of the parties to the easement. By reaching such a conclusion, the court would be overlooking the circumstances surrounding the grant of the easement, circumstances that must have played a significant role in the overall scheme and purpose of the easement that the rule of reason beckons the court to take into account.

When the easement was granted, the servient estate was and still is a marina. As is common knowledge, a marina is a place where boats are stored or secured until used. Additionally, a marina provides a means of access to the boats. To get boats to the slips from the land, use must be made of the boat launching ramp, a use that is clearly reflected in the easement language. In like fashion, the boat launching ramp would have to be used to get boats to the moorings. To the extent that this use can be characterized as an increased use beyond the boundaries of the easement, the court finds that it is a reasonable use that does not unduly burden the servient estate for the following reasons.

The purpose of the moorings is to provide a means of securing boats when not in use. Taking this purpose into account, it stands to reason that the boat launching ramp will be seldomly used to either launch or remove boats that use the moorings as anchors. Moreover, the amount of ramp use is further limited by the finite, relatively small number of moorings that would be serviced by the launching ramp. Finally, the launching ramp is located on a marina. Use of the launching ramp to launch or remove boats that utilize the moorings is more than reasonable, it should be expected.

The only remaining issue with respect to use of the launching ramp is use of the ramp to access the boats tied to the moorings. The court makes short shrift of this issue by adopting the reasoning of the *Robbins* court. To read the easement to allow use of the launching ramp to launch or remove boats from the lake without allowing use of the ramp for access to the boats after having been launched would render the retained right meaningless. Obviously, boats that have been launched were launched with the intent that they would be used either immediately or at some later date. Without the retention of the right to access the launched boats, the right to launch or remove boats via the launching ramp would be meaningless. The court will not interpret the easement to produce such an illogical result which will occur if use of the launching ramp to access the boats is deemed to be outside the contemplated uses. Moreover, due to the limited number of moorings, the court rules that use of the launching ramp to access the moored boats is a reasonable use that will not overly burden the servient estate held by plaintiff.

Upon reconsideration, the court is concerned that by ruling the mooring permit to be invalid, the court may have invaded the province of the state to issue permits and regulate moorings on New Hampshire waters. If the permit was issued based on erroneous information, it is for the state to decide whether to revoke the permit. At this juncture the permit does exist and based on the record is still in effect thus the court vacates the injunction as its relates to the moorings although the original order only required defendant's to refrain from using the moorings to the extent that an act of trespass would have to occur in order to access the moored boats. Nevertheless, any proceeds received from the rental of the moorings shall be held in escrow in accordance with the court's previous order. Defendants' motion seeking to have the court

vacate the injunction relative to the use of the moorings is hereby granted.